UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 SEP 22 PM 1:56
N.D. OF ALABAMA

JENNIFER HAMBRICK,            )
                              )
    Plaintiff,                )
                              )
VS.                           ) Civil Action No. CV-97-S-1851-NE
                              )
LOWE'S, INC.,                 )                ENTERED
                              )
    Defendant.                )            SEP 22 1998

MEMORANDUM OPINION

Plaintiff, Jennifer Hambrick, an African-American female, applied to work as a delivery truck driver for defendant, Lowe's, Inc. ("Lowe's"). Ultimately, Lowe's rejected Hambrick's application. Hambrick has brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and under 42 U.S.C. § 1981, alleging defendant's conduct constituted disparate treatment against her, "because of her race, and/or sex."[1] This action is before the court on defendant's motion for summary judgment.

I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[1] (Complaint ¶ 15.)

44

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden **with** or **without** supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not

2

prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to Hambrick.

## II. FACTS

Hambrick applied for a delivery truck driver position at

3

Lowe's, initially, on October 15, 1996. Having received no response, Hambrick called to check on her application and was told it could not be found. Hambrick accordingly reapplied on October 23, 1996. Again Hambrick called and, this time, was asked to come for an interview.

At the time of her two applications, Hambrick, an impressively industrious woman, held three jobs and worked approximately 90 hours a week. The job for which she applied at Lowe's was a full-time position. The store manager expressed some concern about Hambrick's availability or dependability given her substantial, pre-existing time commitments. Hambrick informed him she planned to quit her part-time job as a bus driver, which occupied about 15 hours a week. Hambrick had performed this work for less than one year. It was her only relevant work experience.

After several interviews and review of her application, Lowe's store manager told Hambrick she appeared qualified for the position, but that further testing would be required. Hambrick received no response and called Lowe's once again. At that time, the store manager told Hambrick the position had been filled by a relative of an employee.

The new driver, Bruce Bice, is a white male. He had 15 years of truck driving experience, including experience with large trucks. After hiring Bice, Lowe's learned of an incident involving some prescription medication, in which Bice had been charged for

4

driving under the influence. The charges against Bice had been dropped by the time Lowe's learned of them, however.

Hambrick spoke with the supervisor of the delivery drivers, an African-American male named Robert Tolliver. Tolliver told Hambrick that Lowe's had never hired a female truck driver and that, in his opinion, Lowe's was discriminating against her. Tolliver then suggested Hambrick reapply for a different vacancy.[2] Upon further inquiry, Hambrick was told Lowe's had no vacancy and would not be hiring any drivers for the rest of the calendar year. The manager assured Hambrick, however, that her application would be considered when a vacancy arose for delivery drivers. Lowe's has not contacted Hambrick concerning an employment opportunity.

In October of 1996, when Hambrick applied for the position, Lowe's employed five black drivers and four white drivers. No one at Lowe's made any discriminatory remarks about females or about African-Americans. Lowe's also has a policy against race and sex discrimination.

### III. DISCUSSION

Title VII provides, in pertinent part, as follows:

(a) It shall be an unlawful employment practice for an employer—
    (1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin; or
    (2) to limit, segregate, or classify his employees

---

[2] This allegation is all Hambrick offers with regard to this other vacancy. No evidence has been received regarding Lowe's continued efforts to seek applicants for this alleged vacancy, or who, if anyone, Lowe's hired.

>or applicants in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). "When § 1981 is used as a basis for relief parallel to that provided by Title VII, the elements of a § 1981 claim are identical to the elements of a Title VII claim." *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980); *accord Walters v. City of Atlanta*, 803 F.2d 1135, 1143 (11th Cir. 1986). Accordingly, this court analyzes Hambrick's Title VII and § 1981 claims together.[3]

Hambrick must prove Lowe's intended to discriminate against her. *See, e.g., Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). The court's evaluation of evidence of an employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

"When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available." *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453 (11th Cir. 1996)(citing *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983); *Haynes v. W.C. Caye and Co., Inc.*, 52 F.3d

---

[3] *Nota bene*, however, that § 1981 applies only to plaintiff's race-based claims. The statute does not apply to discrimination based upon sex. *See* 42 U.S.C. § 1981.

6

928, 931 (11th Cir. 1995)).

A.  Direct Evidence Of Discrimination

When a plaintiff establishes by direct evidence that a contested employment decision was motivated by a discriminatory animus, the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender [race, religion, color, national origin, age, or disability] into account." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795 (1989)(emphasis supplied). In other words, "defendant must prove that there was a separate, racially neutral [*i.e.*, non-discriminatory] reason" for its contested employment decision. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir. 1990) (emphasis supplied).

In the present case, Hambrick has failed to present any direct evidence of discrimination.[4] Therefore, evaluation of her claims must proceed in the framework for cases based upon circumstantial evidence.

B.  Circumstantial Evidence Of Discrimination

Normally, a plaintiff cannot provide direct evidence of the employer's motive: "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service*

---

[4] The court notes that Tolliver was not a decisionmaker for hiring purposes, so his statements regarding discriminatory intent still mandate an inference and are not, therefore, direct evidence.

7

*Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482 (1983). Nevertheless, discriminatory intent may be inferred from circumstantial evidence. In such cases, a burden-shifting framework of analysis is applied to evaluate the strength of the plaintiff's proof, and her ability to withstand a defendant's motion for summary judgment, or for judgment as a matter of law.

In three decisions rendered over two decades, the Supreme Court "developed a formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production for Title VII disparate treatment claims were first defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The analytical framework developed by that trilogy has three steps, the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101

8

S.Ct. at 1094 n.8). The framework "is to be applied in cases where circumstantial evidence is the only proof of discrimination." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d at 923 (citing *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982)).

1.  **First Step of Analysis**

A plaintiff must first establish, by a preponderance of the evidence, a "prima facie case" of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093; *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746-47.

A plaintiff may establish a prima facie case by showing that: (1) she belongs to a protected class; (2) she applied for, and was qualified to fill, a position for which defendant was taking applications; (3) despite her qualifications, she was rejected; and (4) after rejection, the position remained open and defendant continued to seek applications from persons of her qualifications. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (failure to hire based on racial discrimination); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 n.7 (11th Cir. 1994)(same)(citing *Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 536 (11th Cir. 1992), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2932 (1993)(same)).

"The burden of establishing a prima facie case of disparate

9

treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. Nevertheless, establishment of a prima facie case "serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons" for the challenged employment decision, *id.*, 450 U.S. at 253-54, 101 S.Ct. at 1094, and, "in effect creates a <u>presumption</u> that the employer unlawfully discriminated against the employee." *Id.*, 450 U.S. at 254, 101 S.Ct. 1094 (emphasis supplied)(quoted with approval in *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2747). Thus,

> [i]f the trier of fact believes the plaintiff's evidence, <u>and if the employer is silent in the face of the presumption</u>, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094 (emphasis supplied).

However, the establishment of a prima facie case is not an ultimate finding of discriminatory intent; rather, it simply raises a <u>rebuttable</u> presumption of discrimination, "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978).[5]

---

[5] *See Burdine*, 450 U.S. at 254 n.7, 101 S.Ct. at 1094 n.7:

> The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, *Evidence* § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.

10

## 2. Second Step Of Analysis

Therefore, when plaintiff makes out a prima facie case establishing a presumption of intentional discrimination, "[t]he burden ... shift[s] to the employer to articulate [but <u>not prove</u>[6]] some legitimate, nondiscriminatory reason" for the contested employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

> The burden which shifts to the defendant is only that of rebutting the presumption of discrimination, thereby raising an issue of fact. Defendant can meet this burden by producing "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." <u>Defendant is not required at this juncture to prove absence of discriminatory motive, or even to persuade the court that the reasons proffered actually motivated its decision</u>.

A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 41 (3d ed. 1996)(footnotes omitted)(emphasis supplied). Justice Scalia, speaking for the Court in *St. Mary's,* described this shift in the burden of going forward with evidence in the following manner:

> Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut

---

*See also St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2747:

> To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, *Federal Evidence* § 67, p. 536 (1977).

[6] *See, e.g., Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons"); *see also, Busby v. City of Orlando*, 931 F.2d 764, 77 n.12 (11th Cir. 1991)("[T]his 'burden of proof' is to be understood as a burden of production, not persuasion" (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)).

11

the prima facie case — *i.e.*, the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." ... "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the cause of the employment action. ... It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," .... In this regard it operates like all presumptions as described in Rule 301 of the Federal Rules of Evidence:

"In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

*St. Mary's Honor Center*, 509 U.S. at 506-07, 113 S.Ct. at 2747 (citations to *Burdine* omitted).

If a defendant offers no "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096, then "the court must award judgment to the plaintiff as a matter of law ...." *St. Mary's Honor Center*, 509 U.S. at 509, 113 S.Ct. at 2748.

On the other hand, "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is

12

rebutted," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094-95, and "drops from the case." *Id.*, 450 U.S. at 255 n.10, 101 S.Ct. at 1095 n.10; *accord, St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48. "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101 S.Ct. at 1095 n.10.

> The plaintiff then has "the full and fair opportunity to demonstrate," ... "that the proffered reason was not the true reason for the employment decision," ... and that race was. He retains that "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." ...

*St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48 (citations to *Burdine* omitted).

### 3.  Third Step Of Analysis

"The defendant's 'production' (whatever its persuasive effect) having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095.

> [T]he "new level of specificity" ... refer[s] to the fact that the inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.

*St. Mary's Honor Center*, 509 U.S. at 516, 113 S.Ct. at 2752.

Thus, at this third level of analysis, plaintiff has the burden of proving that the defendant's explanation is "a pretext

13

for discrimination." To do that, plaintiff must show <u>both</u> that the defendant's stated reasons for the contested employment decision are false, or not worthy of belief, <u>and</u> that it is more likely true than not true that discrimination was the true reason.

> [A] reason cannot be proved to be a "pretext for discrimination" unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason.

*St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis supplied). In other words, simply showing the employer's stated reasons are false, or unworthy of belief, does not—standing alone—compel a finding of discrimination; rather, plaintiff still must prove that discrimination was a motivating factor in the decision.

> It is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.

*Id.*, 509 U.S. at 519, 113 S.Ct. at 2754 (emphasis in original).

D.  **Application Of The McDonnell Douglas Framework**

   1.  **Hambrick's Prima Facie Case**

Hambrick, as an African-American female, qualifies as a member of two protected classes. For purposes of this motion, noting the unrebutted allegation of the store manager's statement as to this fact, the court also finds that Hambrick was qualified for the delivery truck driver position. Despite these apparent qualifications, Lowe's did not hire Hambrick but, instead, hired Bice. Given that Bice had <u>truck</u> driving experience and Hambrick

14

had none, the court is inclined to find that Hambrick could not establish the fourth element of a prima facie case, that Lowe's sought applicants with <u>the same or similar qualifications</u>. This inclination notwithstanding, the court is mindful of the fact that Hambrick's burden is not intended to be onerous. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. Consequently, for purposes of this motion, the court finds that Hambrick's experience as a <u>bus</u> driver places her in the same broad category of experienced applicants as Bice. Thus, Hambrick has established a prima facie case, and the burden of production shifts to Lowe's to articulate a legitimate, nondiscriminatory reason for refusing to hire Hambrick, and hiring Bice instead.

### 2. Lowe's' Legitimate, Nondiscriminatory Reason

Lowe's contends it selected Bice over Hambrick because of his experience as a truck driver. Specifically, Lowe's argues Bice was qualified and Hambrick was not. Lowe's also cites concern for Hambrick's dependability given the demands from her other jobs.

An employer's determination that one potential employee is more qualified for the position than another is a legitimate, nondiscriminatory reason for hiring the more experienced candidate. *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596-97 (11th Cir. 1987); *see also Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir. 1988). In fact, Title VII does not require an employer to hire the <u>most</u> qualified applicant. *Id.* at 1538. Nor does Title VII require

15

an employer to give a member of a protected class preferential treatment. *Id.* at 1539.

The court agrees that Bice was more qualified for the delivery truck driving job. Bice had 15 years of truck driving experience. Hambrick had none. Hambrick was a bus driver, but had held that job for less than a year. The court finds that Lowe's has more than satisfied its burden, and thus the burden shifts back to Hambrick, to prove that Lowe's claim of hiring Bice because of his greater experience was a pretext for discrimination.

3. **Proof Of Pretext**

Hambrick must satisfy the court by a preponderance of the evidence that defendant's stated reasons for hiring Bice instead of Hambrick are false, and that discrimination was the real reason. *See St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752. Hambrick's argument, essentially, is that the decision was based upon nepotism, or favoritism for a current employee's relative. Hambrick also offers alleged statements of Tolliver, the delivery supervisor, that Lowe's had hired no women drivers and, in his opinion, the decision was motivated by gender discrimination.

"Nepotism does not constitute discrimination under Title VII." *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990). In *Platner v. Cash & Thomas Contractors, Inc.*, the Eleventh Circuit went on, borrowing language from a Fourth Circuit opinion, to the effect that:

16

> In the absence of proof of discriminatory intent ... "nepotism" by itself is not actionable under a disparate treatment analysis. A racially discriminatory motive cannot, as a matter of law, be invariably inferred from favoritism shown on the basis of some family relationship.

*Id.* In this case, Lowe's has the additional argument that the decision was legitimately based upon merit. The court finds Hambrick's argument based upon nepotism unavailing. *See Smith*, 839 F.2d at 1538 ("If an employer selects the person it believes is most qualified, an argument of pretext ordinarily will fail.").

Similarly, the court finds any statement by Tolliver, and the criminal charges against Bice that were dropped, insufficient to raise a question of fact regarding defendant's motivation. First, Tolliver is not a decisionmaker in this hiring context. Second, although his statement may be of some probative value as to the decisionmaker's intent if supported by other, more substantial evidence, this statement alone is a mere conclusory allegation.[7] *See Grigsby*, 821 F.2d at 597. With regard to the charges against Bice, Lowe's had no knowledge of these until after the hiring decision at issue was made. The charges, therefore, are of no moment for purposes of this motion.

---

[7] Considering this statement as a submission of statistical evidence would also be unavailing for Hambrick. Problems that Lowe's highlights with regard to applicant flow aside, the evidence still cannot negate Lowe's legitimate, nondiscriminatory reason. *See Krieg v. Paul Revere Life Insurance Co.*, 718 F.2d 998, 1002 (11th Cir. 1983).
In addition, with regard to claims of racial discrimination, Hambrick can offer no evidence as strong as the bare allegation above. Lowe's has employed roughly half as many black drivers as white drivers in any relevant time period.

17

## IV. CONCLUSION

Hambrick's prima facie case created only a rebuttable presumption of discrimination, and did not establish a genuine issue of material fact. The Eleventh Circuit has stated that "evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment." Hambrick, however, has presented none. The Eleventh Circuit also recognizes that "[w]here the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." *Grigsby*, 821 F.2d at 597. This court finds that Lowe's evidence of Bice's years of relevant experience compared to Hambrick's little experience, if any, completely overcomes any inference created by Hambrick's submissions.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 22nd day of September, 1998.

United States District Judge